IIN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>LYLE RIKIO CUMMINGS,<br><br>Defendant. | Case No. 22-cr-00023-DKW<br><br>**ORDER DENYING SECOND MOTION TO SUPPRESS** |

Defendant Lyle Rikio Cummings moves to suppress certain statements he made during a Maui Police Department ("MPD") investigation into his involvement with the criminal enticement of a minor. Dkt. No. 70. First, Cummings claims a cellphone-related statement he made to his arresting officer should be suppressed because the officer did not use certain specific language when providing *Miranda* warnings. Second, Cummings claims all statements made after a certain point during a post-arrest, recorded interview should be suppressed because he withdrew his *Miranda* waiver in the middle of the interview.

As explained more fully below, neither claim has merit. First, it is well-established that law enforcement officers are not required to use any particular language when providing *Miranda* warnings, so long as the warnings reasonably

1

convey the *Miranda* rights. Here, the officer's warnings were more than adequate in this respect, even though the officer did not read from a card. Second, although Cummings did state during the post-arrest interview, "I like talk to my lawyer," he clearly cabined that request to his response to a *single question* about whether he would submit to a polygraph examination. In fact, Cummings immediately clarified that he *did not* want to terminate the interview more generally, and the officers did not ask any additional questions about a polygraph exam. Thus, Cummings' request did not vitiate his consent to speak with the investigators about matters unrelated to the polygraph. The motion is DENIED.

## LEGAL STANDARD

### I. Provision of *Miranda* Warnings

The Fifth and Sixth Amendments to the U.S. Constitution afford certain protections to criminal detainees during custodial interrogations, including the rights against self-incrimination and of counsel. *See* U.S. Const. amends. V, VI; *see also Vega v. Tekoh*, 142 S. Ct. 2095, 2099–2100 (2022) (citing *Miranda v. Arizona*, 384 U.S. 436 (1966)). Accordingly, prior to any custodial interrogation, law enforcement officials must provide what has become known as *Miranda* warnings -- informing a detainee that "he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be

appointed for him prior to any questioning." *Vega*, 142 S. Ct. at 2099–2100 (quoting *Miranda*, 384 U.S. at 479). If such warnings are not provided, evidence obtained as a result of an interrogation risks exclusion prior to trial.

It is well-established that no particular language need be used when giving the warnings, so long as the warnings "reasonably 'convey to a suspect his rights as required by *Miranda*.'" *Duckworth v. Eagan*, 492 U.S. 195, 202–03 (1989) (quoting *California v. Prysock*, 453 U.S. 355, 360 (1981)); *see also Prysock*, 453 U.S. at 359–60 ("This Court has never indicated that the 'rigidity' of *Miranda* extends to the precise formulation of the warnings given a criminal defendant. . . . Quite the contrary, *Miranda* itself indicated that no talismanic incantation was required to satisfy its strictures.").

## II. Waiver of *Miranda* Rights

A detainee may waive his *Miranda* rights, so long as the waiver is voluntary, knowing, and intelligent. *Miranda*, 384 U.S. at 444–45, 465. In order to be considered voluntary, a waiver must be "the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Moran v. Burbine*, 475 U.S. 412, 421 (1986) (citing *Edwards v. Arizona*, 451 U.S. 477, 482 (1981) and *Brewer v. Williams*, 430 U.S. 387, 404 (1977)). "An admission is involuntary if coerced either by physical intimidation or psychological pressure." *United States v. Shi*, 525 F.3d 709, 730 (9th Cir. 2008) (citation omitted). In order to be considered

knowing and intelligent, a waiver must be "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran*, 475 U.S. at 421 (citing *Edwards*, 451 U.S. at 482 and *Brewer*, 430 U.S. at 404). In the Ninth Circuit, several factors are relevant to evaluating whether a waiver is knowing and intelligent:

(i) the defendant's mental capacity;

(ii) whether the defendant signed a written waiver;

(iii) whether the defendant was advised in his native tongue or had a translator;

(iv) whether the defendant appeared to understand his rights;

(v) whether the defendant's rights were individually and repeatedly explained to him; and

(vi) whether the defendant had prior experience with the criminal justice system.

*United States v. Price*, 980 F.3d 1211, 1226–27 (9th Cir. 2019) (quoting *United States v. Crews*, 502 F.3d 1130, 1140 (9th Cir. 2007)).

It is the Government's burden to prove the validity of any *Miranda* waiver. *Bumper v. North Carolina*, 391 U.S. 543, 548 (1968). "Only if the 'totality of the circumstances surrounding the interrogation' reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived." *Moran*, 475 U.S. at 421. Waiver need not be express. *Berghuis v. Thompkins*, 560 U.S. 370, 384 (2010). Implicit waiver is

4

shown, and suffices, where the government establishes both that *Miranda* warnings were given and that the accused understood his rights, after which the accused made an uncoerced statement. *Id.* The law presumes that an individual who, with a full understanding of his rights, acts in a manner inconsistent with those rights' exercise has made a deliberate choice to relinquish the protections the rights afford. *Id.* at 385.

### III.   Withdrawal of Waiver

Waiver of any *Miranda* right—including, as relevant here, the right to counsel during questioning—may be withdrawn at any time during an interrogation. "[I]f at any point during an interrogation a suspect invokes his right to counsel, all questioning must cease and may not resume in the absence of counsel unless the suspect himself initiates the further discussions." *Robinson v. Borg*, 918 F.2d 1387, 1390 (9th Cir. 1990) (citing *Edwards v. Arizona*, 451 U.S. 477, 484–85 (1981)); *see also Desire v. Att'y Gen. of Cal.*, 969 F.2d 802, 804–05 (9th Cir. 1992) ("When a defendant has invoked his rights, the police cannot question him further, and cannot ask about whether he wants to talk about the case without his lawyer.") (citing *Smith v. Illinois*, 469 U.S. 91, 93 (1984)).

That said, courts must "determine whether the accused *actually* invoked his right to counsel." *Davis v. United States*, 512 U.S. 452, 458–59 (1994) (emphasis in original) (quoting *Smith*, 469 U.S. at 95). "[T]his is an objective inquiry. . . .

5

[I]f a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel, our precedents do not require the cessation of questioning." *Id.* In other words, a detainee "must articulate his desire to have counsel present sufficiently clearly that a reasonable officer in the circumstances would understand the statement to be a request for an attorney." *Id.* at 459; *United States v. Ogbuehi*, 18 F.3d 807, 813 (9th Cir. 1994) (explaining that courts review a detainee's words "as ordinary people would understand them," and "[i]f the defendant's request clearly 'expresses his desire to deal with the police only through counsel,' then all interrogation must cease") (quoting *Edwards*, 451 U.S. at 484). "If the desire is not clearly expressed, then further questioning must be limited to clarifying the defendant's intention." *Id.* (quoting *Edwards*, 451 U.S. at 484).

## RELEVANT FACTUAL ALLEGATIONS

On March 15, 2020, MPD officers arrested Cummings for electronic enticement of a child in violation of Hawaiʻi Revised Statutes ("H.R.S") §§ 707–756, pursuant to an undercover operation that involved law enforcement posing as a fictitious 13-year-old girl online. Immediately following the arrest, while Cummings was standing on the sidewalk handcuffed outside of his vehicle, MPD Detective Oran Satterfield engaged in the following colloquy with Cummings:

**OS:** Mr. Cummings, turn around.  My name is Detective Satterfield with the Maui Police Department.  You have the right to remain silent.  Anything you say can be used against you in court.  You have the right to talk to an attorney before we ask any questions and to have that attorney present with you during questioning.  If you cannot afford an attorney, one will be appointed to you before any questioning.  Mr. Cummings, do you understand your rights?

**LC:** Yes.

**OS:** Where you headed tonight?

**LC:** Just cruising.

**OS:** Just cruising?

**LC:** Yeah.

**OS:** Okay.  Anything in your pockets?

**LC:** No.

**OS:** We're going to search you.  Anything in your pockets, anything we can poke ourselves with?

**LC:** No.

**OS:** Nothing?  Anything in your pocket—you have a cell phone?

**LC:** No.

**OS:** No cell phone.

**LC:** It stay in the car.

**OS:** Stay in the car?  Okay.  What's the password for your cell phone?

**LC:** 071122.

>**OS:** 071122?  071122.  Okay.  Can we have consent to search your car?  You can refuse us consent; I'm just asking your permission.
>
>**LC:** I refuse.
>
>**OS:** You refuse consent?  Okay.  We're going to impound your car.

Dkt. No. 75-5 (arrest video).  The colloquy concluded and officers searched Cummings' pockets.

Cummings was then transported to the Kihei Police Station, where he was interviewed by two law enforcement officers, MPD Officer LeeAnn Galario-Guzman and Homeland Security Investigations Agent Laura Dai.  This interview was video-recorded.  Dkt. No. 75-1 (interview video).  Prior to the commencement of the interview, Officer Galario-Guzman presented Cummings with a waiver of rights form, MPD Form 103.  *Id.*  The form stated, as relevant here:

>**WARNING OF RIGHTS**
>
>Before we ask you any questions, we want to tell you about your rights.
>
>You have the right to remain silent.
>
>Anything you say can be used against you in court.
>
>You have the right to talk to a lawyer for advice before we ask you any questions and to have your lawyer with you during questioning.
>
>If you cannot afford a lawyer one will be appointed for you before any questioning. . . .
>
>I understand the English language.  I have read and heard this statement of my rights and I understand what my rights are.

8

Dkt. No. 75-3. Beneath this warning, there was a blank for a signature, date, and time, and the question, "Would you like to waive your rights and speak with me now?" along with a space to mark "YES" or "NO." *Id.* As Galario-Guzman provided the form to Cummings, she said:

> Okay. So, um, before I ask questions, we're going to read you your rights and then . . . it's up to you if you want to say anything or not. Okay? . . . And then I going [*sic*] read this aloud to you, you just g'. . . follow with me. . . . It's just so you understand it. Alright?

Dkt. No. 75-2 at 1.

Galario-Guzman then instructed Cummings to follow along on the form as she read the contents aloud and to write his initials next to each sentence if he understood. She read the form:

> **GG:** "Before we ask you any questions, we want to tell you about your rights." So if you understand that, you can initial.
>
> **LC:** (Writes his initials.)
>
> **GG:** "You have the right to remain silent." You understand? You understand that?
>
> **LC:** Yes. (Writes his initials.)
>
> **GG:** "Anything you say can be used against you in court."
>
> **LC:** Yes. (Writes his initials.)
>
> **GG:** You understand? Okay. "You have the right to talk to a lawyer for advice before we ask you any questions and to have your lawyer with you during questioning." You understand?

9

**LC:** Yeah.  (Writes his initials.)

**GG:** Okay.  "If you cannot afford a lawyer one will be appointed for you before any questioning."  You understand?

**LC:** Yes.  (Writes his initials.)

**GG:** Okay.  Initial please.  Okay, so, we'll ask you . . . skip that part and just like you read this one out loud.  And if you understand it, sign, today's date, and time.

**LC:** "I understand the English language.  I have read and heard this statement of my rights and I understand what my rights are."

**GG:** You understand, yeah, what just read?

**LC:** Yeah.

**GG:** Okay.  Just sign.

**LC:** (Signs his name with date and time.) . . .

**GG:** Okay and the next line is "Would you like to waive your rights and speak with me now?"  So like I—like how you—right now is—if you want to speak with us and then later on say you don't want to speak with us, that's fine.  We'll end the conversation and—and you get—um—taken with the officers out there.

**LC:** Okay.

**GG:** You want to speak with me?

**LC:** Yeah.

**GG:** Okay.

**LC:** (Writes his initials on the line corresponding with the word "YES" on the form, indicating that he wished to speak with law enforcement.  Then hands the form to Galario-Guzman.)

10

*Id.* at 1–3.

Questioning ensued, with Cummings voluntarily answering questions for approximately seven minutes (until minute 9:45 on the video recording). *See id.* at 3–11. At that point, the following conversation took place:

> **GG:** Are you willing to do . . . um . . . polygraph exam, if we are able to do it today?
>
> **LC:** Uh . . .
>
> **GG:** A lie detector test.
>
> **LC:** I like talk to my lawyer.
>
> **GG:** You like talk to your attorney? Okay. Alright. And you like talk to your lawyer because of the polygraph?
>
> **LC:** Yeah.
>
> **GG:** You fine talking with us still or you . . . you want to talk to your attorney already?
>
> **LC:** Depends on the questions.
>
> **GG:** Okay. So you're still willing for speak with us?
>
> **LC:** Yeah.
>
> **GG:** Okay.

*Id.* at 11. Questioning then continued for about nine additional minutes, with Cummings continuing to answer questions without further mention or invocation of his right to counsel. *Id.* at 11–21.

11

## RELEVANT PROCEDURAL BACKGROUND

Maui County charged Cummings with Electronic Enticement of a Child in the First Degree in violation of H.R.S. §§ 707–756 pursuant to their undercover operation. On June 18, 2021, Cummings was charged in a two-count federal criminal complaint with the enticement of a minor in violation of 18 U.S.C. § 3422(b) and possession with the intent to distribute controlled substances in violation of 21 U.S.C. § 841(b)(1)(C). Trial on the federal counts is set for June 7, 2023. Dkt. No. 81.

On March 24, 2023, Cummings filed the instant motion to suppress certain statements. Dkt. No. 69. First, he contends the provision of his cellphone passcode to Detective Satterfield at the time of his arrest should be suppressed, along with evidence obtained pursuant to that statement. He claims the *Miranda* warnings Satterfield gave were invalid because Satterfield did not ask, "Would you like to speak with [me]?" at the conclusion of the warnings, as is written on the bottom of MPD Form 103. *See* Dkt. Nos. 75-3, 81. Second, Cummings contends that any statements he made in the post-arrest interview after he said, "I like talk to my lawyer," should be suppressed because the officers were obligated to end the interview immediately upon that statement.

The Government opposed the motion on April 17, 2023, Dkt. No. 75, and Cummings elected not to file a reply brief. *See* Dkt. No. 81. At a hearing on April

12

21, 2023, the parties agreed that the Court's disposition of the motion was appropriate without evidentiary testimony. Dkt. No. 81. The Court thereafter heard oral argument from both parties and verbally DENIED the motion. *Id.* This written Order follows.

## DISCUSSION

**I.    Detective Satterfield's *Miranda* warnings were valid.**

*Miranda* compels an interrogating officer to inform a detainee that "he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning." *Vega*, 142 S. Ct. at 2099–2100 (quoting *Miranda*, 384 U.S. at 479). Detective Satterfield informed Cummings of each of these rights when he said, prior to initiating questioning:

> My name is Detective Satterfield with the Maui Police Department. You have the right to remain silent. Anything you say can be used against you in court. You have the right to talk to an attorney before we ask any questions and to have that attorney present with you during questioning. If you cannot afford an attorney, one will be appointed to you before any questioning. Mr. Cummings, do you understand your rights?

Dkt. No. 75-5 (arrest video). Further, as reflected in the arrest video provided by the government, Detective Satterfield's warnings were given in a professional, serious manner. *See id.* Satterfield did not rush through the warnings or otherwise

13

render them unclear or coercive. *See id.*; *Doody v. Schriro*, 548 F.3d 847, 862 (9th Cir. 2008) (validity of warnings depends on the manner in which they were given). Moreover, Satterfield ensured that Cummings understood the warnings before proceedings with his first question, "Where you headed tonight?" *Id.* (asking, "Mr. Cummings, do you understand your rights?" to which Cummings replied, "Yes").

Cummings contends that the warnings were invalid because Satterfield did not specifically ask the question, "Would you like to speak with [me]?" at the conclusion of the warnings—a question that appears on the MPD Form 103. *See* Dkt. Nos. 75-3, 81.[1] However, as the Supreme Court has made clear, there is no particular language that must be used when providing *Miranda* warnings. *See, e.g.*, *Prysock*, 453 U.S. at 359–60 (holding *Miranda*'s "rigidity" does not "extend[] to the precise formulation of the warnings given a criminal defendant"). Instead, the question is whether the warnings "reasonably 'convey[ed]'" the *Miranda* rights. *Duckworth*, 492 U.S. at 202–03 (quoting *Prysock*, 453 U.S. at 360).

Here, Detective Satterfield's warnings certainly did so, there is no evidence or even argument that Cummings did not understand those rights, having, in fact, admitted that he did, and there is no evidence that Cummings wished to invoke any of his rights at that time, as he subsequently did when interviewed by law

---

[1] Cummings admits there is no caselaw to support his position that this particular question must be asked simply because it appears on the MPD rights form. Dkt. No. 81.

14

enforcement officers later that evening at the Kihei Police Station.  Though Cummings' waiver was not express, "the 'totality of the circumstances surrounding the investigation' reveal both an uncoerced choice and the requisite level of comprehension . . . ."  *See Berghuis*, 560 U.S. at 384; *Moran*, 475 U.S. at 421; *see also ibid.* (no evidence or allegation of "intimidation, coercion, or deception"); *Shi*, 525 F.3d at 730 (no evidence or allegation of "physical intimidation or psychological pressure"); *Price*, 980 F.3d at 1226–27 (six relevant factors).  In short, there was nothing constitutionally defective about Cummings' March 15, 2020 interview by Detective Satterfield.

**II.     Cummings did not withdraw his waiver of his right to counsel.**

It is undisputed that Cummings voluntarily, knowingly, and intelligently waived his *Miranda* rights *prior to* the commencement of his post-arrest interview by Officer Galario-Guzman and Agent Dai.  However, Cummings asserts that he withdrew his waiver in the middle of the interview by making the statement, "I like talk to my attorney," upon being asked if he would submit to a polygraph exam. *See* Dkt. Nos. 75-1 (interview video at minute 09:45); 75-2 at 11 (interview transcript); 81 (oral argument).

No such withdrawal occurred.  Viewing the circumstances of Cummings' statement "objective[ly]" and "as ordinary people would understand them," Cummings did not "articulate his desire to have counsel present sufficiently clearly

15

that a reasonable officer in the circumstances would understand the statement to be a request for an attorney." *See Davis*, 512 at 458–59; *Ogbuehi*, 18 F.3d at 813. Rather, a reasonable officer would have interpreted Cummings' statement exactly as Galario-Guzman and Dai appear to have interpreted it—as a *response* to Galario-Guzman's specific question about whether Cummings would submit to a polygraph examination. Cummings made the statement in the same tone of voice and with the same rate of speech as the rest of his responses to the officer's questions over the prior seven minutes. *See* Dkt. No. 75-1. It was, at most, ambiguous whether he wanted an attorney *in general* for the rest of the interview, or whether he wanted to consult with an attorney about submitting to a polygraph, the particular issue with which he had just been presented. Accordingly, the officers appropriately clarified Cummings' request. *See Ogbuehi*, 18 F.3d at 813 ("If the desire is not clearly expressed, then further questioning must be limited to clarifying the defendant's intention."). In a measured and neutral manner, Galario-Guzman asked, "You like talk to your attorney? Okay. Alright. And you like talk to your lawyer because of the polygraph?" to which Cummings promptly replied, "Yeah." Dkt. No. 75-2 at 11. Galario-Guzman then clarified Cummings' intention twice more:

>    **GG:** You fine talking with us still or you . . . you want to talk to your attorney already?
>
>    **LC:** Depends on the questions.

16

> **GG:** Okay. So you're still willing for speak with us?
>
> **LC:** Yeah.
>
> **GG:** Okay.

*Id.* Thus, Cummings clearly indicated that he was invoking only his right not to answer questions relating to a polygraph without an attorney present. And, moreover, he indicated his willingness and ability to invoke that right as the interview proceeded, "[d]epend[ing] on the questions" posed. *Id.* Thus, as the officers correctly clarified, Cummings did not "*actually invoke* his right to counsel" as it pertained to the interrogation as a whole. *See Davis*, 512 U.S. at 458–59 (emphasis in original). No further questions relating to a polygraph examination were posed during the interview, and there was no violation of Cummings' right to counsel.

## CONCLUSION

For the foregoing reasons, Cummings' second Motion to Suppress, Dkt. No. 70, is DENIED.

IT IS SO ORDERED.

DATED: May 9, 2023 at Honolulu, Hawaiʻi.

Derrick K. Watson
Chief United States District Judge